United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRUSTEES OF THE U.A. LOCAL 393 PENSION FUND AND THE U.A. LOCAL 393 HEALTH AND WELFARE TRUST FUND,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD ALAN PIERCE, a sole proprietor, dba PIERCE PLUMBING,<br><br>Defendant. | Case No. 5:14-cv-00738 HRL<br><br>**ORDER THAT CASE BE REASSIGNED TO A DISTRICT JUDGE**<br><br>**REPORT AND RECOMMENDATION THAT MOTION FOR DEFAULT JUDGMENT BE GRANTED**<br><br>[Re:  Dkt. No. 15] |

Pursuant to sections 502 and 515 of the Employee retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132 and 1145, and section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, plaintiffs sue to recover unpaid contributions owed by defendant employer Richard Alan Pierce (doing business as Pierce Plumbing), liquidated damages, and attorney's fees and costs incurred in connection with this action.  Pierce was served with process (Dkt. 5), but failed to answer or otherwise respond.  At plaintiffs' request, the Clerk of the Court entered his default.  (Dkt. No. 9).

Plaintiffs now move for default judgment in the amount of $77,354.74, which sum includes the amount of principal contributions owed, plus liquidated damages, attorney's fees, and

costs. Pierce has not filed any response to the motion.[1] Nor has he made any appearance (formal or informal) in this matter. The matter is deemed suitable for determination without oral argument. Civ. L.R. 7-1(b). Upon consideration of the moving papers and the record in this case, this court recommends that plaintiffs' motion be granted.

## BACKGROUND

Plaintiffs are the trustees of two U.A. Local 393 benefit funds. In 2011, Pierce entered into a Master Labor Agreement (MLA), which requires him to make contributions to the funds based on work performed by Local 393 members. (Gonzalez Decl. ¶ 6, Ex. 1; Jesinger Decl. ¶¶ 5-7, Exs. 1-3).[2] The MLA also requires employers to submit a monthly work report, along with a corresponding payment, by the fifteenth day of the month following the calendar month in which the work was performed. (Jesinger Decl. ¶ 7, Ex. 1 at 68). The MLA provides for liquidated damages in the amount of 20% of any principal contribution that is due and unpaid at the time suit is filed to collect those sums. (Id., Ex. 1 at 69). Alternatively, if the principal sum is paid late, but

---

[1] Defendants served a copy of the instant motion on defendant at the only address associated with Pierce Plumbing on the record presented. It is unclear whether that remains a valid address for defendant because the Clerk of the Court's notice of entry of default was returned to the court as undeliverable. (Dkt. 11). Even so, a party in default is not entitled to notice under Fed. R. Civ. P. 55 unless it has appeared, formally or informally, and demonstrated a clear intent to defend the suit. Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."); In re Roxford Foods, Inc., 12 F.3d 875, 879 (9th Cir. 1993) ("While it is true that the failure to provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for the failure to do so, notice is only required where the party has made an appearance.") (quotations and citations omitted); Wilson v. Moore & Assocs., Inc., 564 F.2d 366, 368 (9th Cir. 1977) ("No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the action."). As discussed above, defendant has never appeared, formally or otherwise, in this case.

[2] The MLA signature page shows that the signature for Pierce Plumbing is dated "6-29-30," which is an apparent typographical error. (Gonzalez Decl. ¶ 6, Ex. 1). Plaintiffs say that Local 393's usual practice is to have the union execute the MLA signature page within two weeks after receiving the employer's signature; and, it therefore is likely that Pierce signed the MLA signature page on June 29, 2011. (Id.). Additionally, although the MLA's title page indicates that the agreement's term ran from July 1, 2009 to June 30, 2012 (see Jesinger Decl. ¶ 5, Ex. 1), plaintiffs say that the union and employer associations entered into a successor agreement, with a term spanning from July 2012 to June 2015. (Gonzalez Decl. ¶ 8, Ex. 3). The modified terms reflected in the successor agreement are not relevant to the matters at issue here. (Id.).

2

1  before suit is filed, the MLA requires the delinquent employer to pay an additional $250.00 flat fee
2  per month as liquidated damages. (Id.).

3        Pursuant to the MLA terms, Local 393 maintains a hiring hall through which employers
4  hire employees. (Gonzalez Decl. ¶ 9). On June 13, 2013, the union issued an employment referral
5  for one of its members, Arthur Ramirez, to be dispatched to Pierce Plumbing. (Id., Ex. 4). That
6  employment dispatch, say plaintiffs, was the only one made by the union to Pierce Plumbing from
7  June 2013 to the present. (Id. ¶ 9).

8        According to plaintiffs, Pierce submitted only one report for the month of June 2013---and
9  even then, the contribution owed in connection with that report was paid late. (Jesinger Decl. ¶¶
10  8-9, Ex. 4).

11        Beginning in July 2013, plaintiffs say that Pierce failed to submit the required monthly
12  reports and did not pay the contributions owed for each month.

13        In February 2014, Ramirez approached Al Gonzalez, Local 393's Business Representative,
14  and said that he was being underpaid at Pierce Plumbing and that he was not consistently
15  receiving his wages when due. (Gonzalez Decl. ¶ 5). Ramirez provided Gonzalez with
16  calculations of the number of hours Ramirez estimated he had worked and the claimed shortage in
17  his wage payments. (Id.). Following his investigation of Ramirez's allegations, Gonzalez filed a
18  grievance on behalf of the union against Pierce Plumbing. (Id. ¶ 10, Ex. 5).

19        The MLA requires disputes to be resolved by referral to a labor-management panel known
20  as the Joint Conference Board (Board). (Gonzalez Decl. ¶ 11; Jesinger Decl. ¶ 5, Ex. 1 at 30). On
21  March 6, 2014, the Board held a hearing on Local 393's grievance against Pierce Plumbing.
22  Gonzalez presented evidence on the union's behalf. (Id. ¶ 12). Pierce Plumbing made no
23  appearance. (Id.). On July 21, 2014, the Board issued its decision, finding that Ramirez worked
24  1,304 hours of straight time and 180 hours of overtime while employed by Pierce Plumbing
25  between June 2013 and February 2014. (Id. ¶¶ 13-14, Ex. 6). Elizabeth Jesinger, the Chief
26  Administrator of the subject benefit funds, says that other than the single (belated) payment for
27  work performed in June 2013, Pierce Plumbing has not made any contributions to the union's

benefit funds.  (Jesinger Decl. ¶ 8, Ex. 4).

According to Gonzalez, other union employees have worked a number of hours for Pierce Plumbing for which no report was ever submitted; and, defendant has not had employees (other than Ramirez) dispatched through the Local 393 hiring hall as required by the MLA.  (Gonzalez Decl. ¶ 15).  Gonzalez says he attempted to contact Pierce Plumbing numerous times---and only once found anyone at its business address, but Pierce was not there at the time.  (Id.).

Due to defendant's failure to provide the requisite reports, plaintiffs say that they are unable to substantiate the sums that might be owed to the funds for all the work performed for Pierce Plumbing by union members.  Additionally, given Gonzalez's difficulty in contacting Pierce Plumbing, defendant's failure to appear for Local 393's grievance re Ramirez, and his failure to defend this action, plaintiffs believe that attempting to conduct an audit will likely prove futile.  Accordingly, they now seek default judgment based only on the Board's decision on the union's grievance re Ramirez, with the requested judgment to be measured solely by the contributions owed for Ramirez's work.

## DISCUSSION

After entry of default, courts may, in their discretion, enter default judgment. See Fed. R. Civ. P. 55; Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In deciding whether to enter default judgment, a court may consider the following factors:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  When the damages claimed are not readily ascertainable from the pleadings and the record, the court may conduct a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate

4

any other matter. Fed. R. Civ. P. 55(b)(2).

## A. Liability-Related Allegations

All of the Eitel factors favor entry of default judgment here. Having reviewed the complaint, the court finds that plaintiffs' claims have merit and are sufficiently pled. According to the factual allegations, which are deemed true, defendant violated ERISA and breached the MLA by failing to submit the required monthly reports and to make the contributions owed for each such month. See 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.")

The sum of money at stake in the action is not insignificant. Nevertheless, because all liability-related allegations are deemed true, there is no possibility of a dispute as to material facts. Moreover, Pierce has failed to appear or present a defense in this matter; and, there is no indication that his default was due to excusable neglect. While the court prefers to decide matters on the merits, defendant's failure to participate in this litigation makes that impossible. A default judgment against him is plaintiffs' only recourse.

## B. Damages

As noted above, plaintiffs seek $77,354.74 in principal contributions owed for work performed by Ramirez, plus liquidated damages, attorney's fees, and costs. 29 U.S.C. § 1132(g)(2).

### 1. Unpaid Principal Contributions

When a defendant fails to provide periodic reports or when a plaintiff does not have access to the defendant's books and records, courts have accepted a plaintiff's estimates as to delinquent contributions where those estimates are found to be reasonable and as accurate as possible under the circumstances. See, e.g., Flynn v. Extreme Granite, Inc., 671 F. Supp.2d 157, 162 (D.D.C. 2009) (citing cases).

Here, plaintiffs have only the Board's decision on Local 393's grievance re Ramirez.

5

1   Plaintiffs say that the Board's decision has not been confirmed as a civil judgment by any court,
2   although they contend that union grievance procedures are valid proceedings that may be subject
3   to such confirmation. See generally Painters Dist. Council No. 33 v. Moen, 128 Cal. App.3d 1032
4   (1982); see also Stevens v. Highway, City & Air Freight Drivers, Dockmen, & Helpers Local
5   Union No. 600, 794 F.2d 376 (8th Cir. 1986). To be clear, this court does not purport to confirm
6   the Board's award of unpaid wages as a civil judgment here. Rather, the court considers only
7   whether the Board's decision provides a reasonable basis for plaintiffs' calculations as to the
8   unpaid contributions they claim defendant owes to the subject funds based on Ramirez's work.[3]

9   Because Pierce Plumbing failed to appear for the hearing on Local 393's grievance, the
10  Board decided to credit the union's estimates of Ramirez's work hours, but not on a wholesale
11  basis. The Board concluded that Ramirez's overtime estimates were overstated because he did not
12  keep any personal records of his work hours and no records from Pierce Plumbing were available.
13  (Gonzalez Decl. ¶ 13, Ex. 6). Thus, the Board credited only up to 10 hours of overtime per week
14  during periods where Ramirez claimed to work over 50 hours per week (approximately June 2013
15  through mid-August 2013). (Id.). For other pay periods where Ramirez claimed to have worked
16  more than 40 hours per week, but less than 50 hours per week total, the Board credited the amount
17  of overtime claimed. (Id.). Based on those principles, and as discussed above, the Board
18  concluded that during his employment at Pierce Plumbing from June 2013 through February 2014,
19  Ramirez worked a total of 1,484 hours---i.e., 1,304 hours of straight time, plus 180 hours of
20  overtime. (Id.).

21  In view of defendant's failure to provide the requisite reports, this court concludes that,
22  under the circumstances presented here, plaintiffs' reliance on the Board's findings as to
23  Ramirez's work hours is reasonable and those estimates are as accurate as can be under the
24  circumstances. Indeed, defendant has failed to appear at all in this action or to provide

---

[3] Local 393 requested that the Board make a determination as to the trust fund contributions Pierce owes based on Ramirez's work hours, but the Board declined to do so. (Gonzalez Decl. ¶ 13, Ex. 6).

United States District Court
Northern District of California

information that would enable the court to make a more precise determination. An employer should not escape liability for his failure to pay the wages and benefits due his employees by hiding behind his failure to provide the requisite records.

With respect to the unpaid principal amounts, and based on the Board's decision and information in Local 393's dispatch form for Ramirez, Jesinger attests that defendant owes a total of $55,898.16 in principal contributions.[4] (Jesinger Decl. ¶¶ 10-14, Ex. 5). The Jesinger declaration satisfactorily establishes the amount of unpaid principal.

### 2. Liquidated Damages

#### a. Contractual Damages re June 2013 Late Payment

As discussed above, the MLA provides for liquidated damages in the amount of a $250 flat fee per month for any principal sum paid before suit is filed, but which nonetheless is paid late. (Jesinger Decl. ¶ 7, Ex. 1 at 69). Here, Jesinger attests that Pierce owes $250 for the June 2013 contribution, which was paid more than three weeks late. (Id. ¶ 9).

For contributions that are paid prior to the filing of a lawsuit, but which are paid late, plaintiffs may be entitled to liquidated damages as a matter of contract. Idaho Plumbers Trust Funds v. United Mechanical Contractors, 875 F.2d 212, 217 (9th Cir. 1989). Such "liquidated damages are a valid award for breach of contract if (1) it is 'very difficult or impossible' to calculate the harm that stems from the breach, and (2) the amount of damages is a 'reasonable forecast of just compensation for the harm.'" Trs. of Bricklayers Local No. 3 Pension Trust v. Huddleston, No. 10-1708 JSC, 2013 WL 2181532 at *6 (N.D. Cal., May 20, 2013) (quoting Idaho Plumbers, 875 F.2d at 217).

Contractual liquidated damages of $250 are warranted here. With respect to the first requirement, courts in this district have held that "[w]hen an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very

---

[4] This sum does not include 80 hours Ramirez worked in June 2013 and for which payment was reported and made. (Jesinger Decl. ¶ 14). Jesinger also gave defendant a $120 credit for sums that were overpaid with the June 2013 contribution. (Id. ¶ 8).

7

difficult to gauge." Bd. of Trs. v. Udovich, 771 F. Supp. 1044, 1047 (N.D. Cal. 1991); see also Huddleston, 2013 WL 2181532 at *6 (same); Bay Area Painters & Tapers Pension Trust Fund v. Golden Vas Painting, No. C10-02923 CW (DMR), 2011 WL 2020250 at *8 (N.D. Cal., Mar. 17, 2011) (same); Bd. of Trs. of the Laborers Health & Welfare Trust Fund v. Shade Constr. & Eng'g, No. C06-6830 PJH, 2007 WL 3071003 at *8 (N.D. Cal., Oct. 19, 2007) (same). For example, in pursuing payment, "the trust must engage in a number of activities, such as sending additional collection letters, billing statements, and correspondence, and placing follow-up telephone calls, that are made necessary only by the breach but that are so intertwined with on-going operations that their separate value is most difficult to measure." Udovich, 771 F. Supp. at 1049.

"The parties' intentions determine whether the second requirement has been satisfied." Huddleston, 2013 WL 2181532 at *6. "They must have made a 'good faith effort to set an amount equivalent to the damages they anticipate.'" Id. (quoting Udovich, 771 F. Supp. at 1048). Here, the evidence (which remains unrefuted as a result of defendant's default) supports an inference that the parties considered this issue and made a good faith effort to establish a liquidated damages sum that would be a reasonable forecast of just compensation for anticipated harms. The MLA states that the parties "recognize and acknowledge that prompt payments of amounts due by Contractors [for wages and benefits] are essential to the maintenance in effect of the various funds and plans involved, and that it would be extremely difficult if not impractical to fix the actual expense and damage to the parties hereto and to the Funds which would result from the failure of an Individual Contractor to make the monthly payments in full within the time provided." (Jesinger Decl. ¶ 5, Ex. 1 at 69). The MLA further provides that the $250 sum is the agreed-upon amount of damages to be paid as "liquidated damages and not assessment of penalty." (Id.).

### b. Statutory Damages for Unpaid Contributions

ERISA allows for the collection of liquidated damages when the principal contribution is not paid before a plaintiff fund files suit to collect it. 29 U.S.C. § 1132(g)(2)(C)(ii); Idaho Plumbers, 875 F.2d at 215 (ERISA's liquidated damages provision applies "when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3)

8

the plan provides for liquidated damages."). In this case, the MLA requires liquidated damages in the amount of 20% of any principal contribution that has not been paid by the time a collections suit is filed or that becomes owing after such a suit is filed. (Jesinger Decl. ¶ 5, Ex. 1 at 69). The record amply supports plaintiffs' claim for $11,179.64 in statutory liquidated damages.

### 3. Attorney's Fees and Costs

Under ERISA, plaintiffs are also entitled to recover reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D); Operating Engineers Pension Trust v. Reed, 726 F.2d 513, 514 (9th Cir. 1984). Plaintiffs' counsel has submitted a declaration identifying his $250/hour rate, describing his 29 years of experience, and identifying the 37.4 hours of work he performed in this case. (Renner Decl. ¶¶ 2-7, Ex. 1). Generally, the fee applicant must produce evidence, in addition to the attorney's own affidavits, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984). Nevertheless, the court can rely on its own knowledge and experience in evaluating a request for fees. Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (agreeing that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."). This court is familiar with the range of rates customarily charged by attorneys practicing before it, and the stated hourly rate appears to be commensurate with, or even below, those charged for cases of this magnitude and complexity and for similar work performed by attorneys of comparable skill, experience, and reputation. See generally Crosthwaite v. Legg, Inc., No. C13-01065 JSW, 2014 WL 1647525 at *8 (N.D. Cal., Apr. 17, 2014) (observing that in ERISA matters, courts in this district have found reasonable market rates for partners to range between $385-450 per hour). This court is satisfied that the requested fees reasonably were incurred. The record also supports plaintiffs' claimed costs for the filing and server fees. (Dkt. 1; Renner Decl. ¶ 8, Ex. 2). This court finds that plaintiffs should be awarded $9,350.00 in attorneys' fees and $676.95 in costs.

Because all parties have yet to consent to the undersigned's jurisdiction, IT IS ORDERED

1 THAT this case be reassigned to a District Judge.  Further, it is RECOMMENDED that plaintiffs'
2 motion for default judgment be granted and that plaintiffs be awarded $77,354.74 in unpaid
3 principal contributions, liquidated damages, attorney's fees, and costs.  Any party may serve and
4 file objections to this Report and Recommendation within fourteen days after being served.  28
5 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

6 Dated:   October 24, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:14-cv-00738-HRL Notice has been electronically mailed to:

John A. McBride     jmcbride@wmprlaw.com

Mark Stephen Renner     mrenner@wmprlaw.com, etrujeque@wmprlaw.com